UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH R. HENRY,<br><br>            Plaintiff,<br><br>      v.<br><br>MIRANDA, et al.,<br><br>            Defendants. | 1:16-cv-00458-EPG (PC)<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND<br><br>(ECF NO. 19) |

**I.      BACKGROUND**

Kenneth R. Henry ("Plaintiff")  is a former state prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint commencing this action on April 1, 2016.  (ECF No. 1).  Plaintiff filed a First Amended Complaint ("FAC") on November 4, 2016 (ECF No. 16), which was dismissed with leave to amend.  (ECF No. 18).  Plaintiff then filed a Second Amended Complaint ("SAC") on December 27, 2016 (ECF No. 19), which is now before the Court for screening.

Plaintiff has consented to Magistrate Judge jurisdiction in this action pursuant to 28 U.S.C. § 636(c) (ECF Nos. 3, 8), and no other parties have made an appearance.  Therefore, pursuant to Appendix A(k)(4) of the Local Rules of the Eastern District of California, the

1

undersigned shall conduct any and all proceedings in the case until such time as reassignment to a District Judge is required.  Local Rule Appendix A(k)(3).

## II. SCREENING REQUIREMENT

Under 28 U.S.C. § 1915(e)(2), the Court must conduct a review of a complaint when the plaintiff is proceeding *in forma pauperis* to determine whether the complaint "state[s] a claim on which relief may be granted," is "frivolous or malicious," or "seek[s] monetary relief against a defendant who is immune from such relief."  If the Court determines that the complaint fails to state a claim, it must be dismissed.  *Id.*  Leave to amend may be granted to the extent that the deficiencies of the complaint can be cured by amendment.  *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief…."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007)).  Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.* at 678.

In determining whether a complaint states an actionable claim, the Court must accept the allegations in the complaint as true, *Hospital Bldg. Co. v. Trs. of Rex Hospital*, 425 U.S. 738, 740 (1976), construe *pro se* pleadings liberally in the light most favorable to Plaintiff, *Resnick v. Hayes*, 213 F.3d 443, 447 (9th Cir. 2000), and resolve all doubts in Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).  Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after *Iqbal*).

\\\

\\\

### III.  SUMMARY OF PLAINTIFF'S SECOND AMENDED COMPLAINT

Plaintiff names as defendants Miranda (his counselor), correctional officer Torres, and free cook Luna.  Although Plaintiff asserts various legal claims and conclusions, Plaintiff's factual allegations appear to be that, between January and July 2015, the three defendants conspired to sabotage Plaintiff's release date "by giving plaintiff five bogus 115 write-ups within weeks and months to plaintiff's early release parole date," during a period of ninety-three days.  This included a false write-up on June 6, 2015 in an effort to "stop plaintiff Henry July 17, 2015 parole date."  Plaintiff claims that these write-ups all took place because Plaintiff wrote "many 602 complaints on defendants and prison staff members and saying hello to female staff members."  Plaintiff further alleges that the defendants were conspiring to sabotage Plaintiff's parole date.  Plaintiff also claims that he asked repeatedly to be removed from the E-yard kitchen, but that these requests were refused.

### IV.  COURT'S SCREENING ORDER REGARDING PLAINTIFF'S FIRST AMENDED COMPLAINT

On December 1, 2016, the Court screened Plaintiff's FAC and found that it failed to state a cognizable section 1983 claim against any defendant. (ECF No. 18).  The Court notified Plaintiff that the placement in a work assignment, even over Plaintiff's strenuous and well-founded objections, does not state a violation of the constitution.  Plaintiff's allegations about retaliation for filing grievances came close to stating a claim, but required more facts demonstrating the basis for Plaintiff's belief that the adverse action was due to Plaintiff filing grievances.  Plaintiff failed to state a claim for violation of the equal protection clause because he alleged no facts that showed that the reason he was placed on E-yard Kitchen duty despite his protests, or received allegedly false write-ups, was because he is an African-American.  Finally, because Plaintiff had not stated a cognizable claim under federal law, the Court could not exercise supplemental jurisdiction over Plaintiff's state law claims.  The Court did not make a determination about the viability of Plaintiff's state law claims. The Court provided legal standards regarding claims under the Due Process clause, the Equal Protection Clause, the Eighth Amendment and the First Amendment and gave Plaintiff leave to amend.

## V. ANALYSIS OF PLAINTIFF'S CLAIMS IN PLAINTIFF'S SECOND AMENDED COMPLAINT

For the reasons described below, Plaintiff once again fails to state a viable section 1983 claim. The SAC focuses less on the E-yard Kitchen duty and more on the retaliation and conspiracy claims, but once again the complaint lacks sufficient facts that would demonstrate that the adverse action was due to Plaintiff exercising a constitutional right, i.e., filing grievances.

Finally, because Plaintiff has not stated a cognizable claim under federal law the Court cannot exercise supplemental jurisdiction over Plaintiff's state law claims.[1]

### A. 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 618 (1979); *Hall v. City of Los Angeles*, 697 F.3d 1059, 1068 (9th Cir. 2012); *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012); *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *see also Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing

---

[1] The Court is not making a determination about the viability of Plaintiff's state law claims.

"under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Preschooler II*, 479 F.3d at 1183 (quoting *Johnson*, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." *Arnold v. Int'l Bus. Mach. Corp.*, 637 F.2d 1350, 1355 (9th Cir. 1981); *see also Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008).

### B. No Constitutional Right to Certain Work

The Due Process Clause of the Fourteenth Amendment "does not create a property or liberty interest in prison employment, [although] racial discrimination in the assignment of jobs violates equal protection." *Walker v. Gomez*, 370 F.3d 969, 973 (9th Cir. 2004) (internal citations omitted). "General limitation of jobs and educational opportunities is not considered punishment." *Baumann v. Arizona Dept. of Corrections*, 754 F.2d 841, 846 (9th Cir. 1985). The Supreme Court has held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes,* 427 U.S. 236, 242, (1976).

Even though it is just mentioned briefly, Plaintiff accuses defendants of putting Plaintiff into a work assignment over his strenuous objections. This alone does not state a violation of the Constitution. What Plaintiff describes may have violated prison regulations or may state a claim under a state law, but it does not state a claim for violation of the United States Constitution.

\\\

### C. False Allegations

As described in the Court's prior order, filing false allegations by itself does not violate a prisoner's constitutional rights so long as (1) the prisoner receives procedural due process before there is a deprivation of liberty as a result of false allegations, and (2) the false allegations are not in retaliation for the prisoner exercising constitutional rights.  The Court provides additional legal guidance in this order and will permit Plaintiff to amend his complaint once again if he believes that the false allegations would state claim under these legal standards.

It is well settled that making false statements, in and of itself, does not violate the U.S. Constitution.  The Ninth Circuit held in *Hernandez v. Johnston*, 833 F.2d 1316 (9th Cir. 1987) that inaccurate information in a prison record did not violate the prisoner's due process rights. *Id*. at 1318 ("Magistrate Burgess did not discuss Hernandez' separable claim of a due process right to accurate information in his prison record.  We address the issue, and hold that Hernandez was not deprived of liberty by the presence of the challenged statements.").

Although there is no Ninth Circuit case on point, the issue of when false allegations give rise to a constitutional claim was thoroughly addressed in a decision of this district, which was affirmed by the Ninth Circuit in an unpublished decision:

> A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.  *See Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989); *Freeman v. Rideout,* 808 F.2d 949, 951 (2d Cir.1986).  As long as a prisoner receives procedural due process during his disciplinary hearing, a prisoner's allegation of a fabricated prison disciplinary charge fails to state a cognizable claim for relief under § 1983.  *See Freeman,* 808 F.2d at 951 (the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); *Hanrahan v. Lane,* 747 F.2d 1137, 1140–41 (7th Cir.1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided.").

> Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California relying on the cases cited above have determined that a prisoner's allegation that prison officials issued a false

disciplinary charge against him fails to state a cognizable claim for relief under § 1983. *See, e.g., Conner v. Winslow,* No. EDCV 07–218 AG (AN), 2009 WL 1549737 at *18 (C.D. Cal. June 1, 2009); *Williams v. Foote,* No. CV 08–2838 CJC (JTL), 2009 WL 1520029 at *7 (C.D.Cal. May 28, 2009); *Salisbury v. Miller,* No. C 08–4680 MHP (pr), 2009 WL 743925 at *2 (N.D.Cal. Mar.18, 2009); *Meraz v. Reppond,* No. C 08–4540 MHP (pr), 2009 WL 723841 at *2 (N.D.Cal. Mar.18, 2009); *Rodgers v. Reynaga,* No. CV 1–06–1083 JAT, 2009 WL 62130 at *2 (E.D.Cal. Jan.8, 2009); *Drake v. Berg,* No. C 07–3844 PJH (PR), 2008 WL 4482848 at *1 (N.D.Cal. Oct.1, 2008); *Moore v. Thomas,* No. C 06–2105 SBA (PR), 2008 WL 4447726 at *4 (N.D.Cal. Sept.30, 2008); *Deadmon v. Grannis,* No. 06–cv–1382 LAB (WMC), 2008 WL 595883 at *10 (S.D.Cal. Feb. 29, 2008); *Carrillo v. Pena,* No. CIV S–06–2924 RRB DAD, 2007 WL 2994689 at *2 (E.D.Cal. Oct.12, 2007); *Player v. Salas,* No. 04–cv–1761 LAB (WMc), 2007 WL 2781102 at *7 (S.D.Cal. Sept. 21, 2007), *aff'd* 2009 WL 890967 (9th Cir. Apr.3, 2009); *Brookins v. Terhune,* No. CIV S–03–0916 GEB JFM, 2005 WL 3262940 at *4 (E.D.Cal. Nov.28, 2005), *adopted by* 2006 WL 647975, *aff'd* 2007 WL 2827544 (9th Cir. Sept.27, 2007).

In this case, plaintiff alleges that defendants violated his due process rights by bringing a false rules violation charge against him. However, as noted above, the issuance of a false disciplinary charge is not in itself a due process violation so long as prison officials comply with procedural due process requirements. Here, plaintiff does not allege that the defendants Costa or Mendes failed to provide him with procedural due process protections.

*Harper v. Costa* (E.D. Cal., June 16, 2009, No. CIVS07-2149LKK DADP) 2009 WL 1684599, at *2–3, *subsequently aff'd* (9th Cir. 2010) 393 Fed.Appx. 488.

Thus, Plaintiff's claim that he was falsely accused by defendants Miranda, Torres and Luna merely by receiving five false write-ups does not rise to a constitutional violation on its own, unless the false accusations were done in retaliation for Plaintiff's exercising of a constitutional right. This does not mean that filing false charges comports with prison regulations or state law. The question before this Court, however, is whether filing false allegations violated Plaintiff's rights under the United States Constitution.

Here, Plaintiff does not allege that he had received any sort of punishment for the false allegations. Thus, it is not necessary to determine if Plaintiff received due process in adjudicating the allegedly false claims.

Moreover, mere reference to false allegations in a parole hearing is not enough to violate due process. The U.S. Supreme Court provided the following guidance in determining

7

when there is a deprivation of liberty interests such that procedural due process is due in the prison context:

> States may under certain circumstances create liberty interests which are protected by the Due Process Clause. See also *Board of Pardons v. Allen,* 482 U.S. 369, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987). But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. . . .
>
> This case, though concededly punitive, does not present a dramatic departure from the basic conditions of Conner's indeterminate sentence. Although Conner points to dicta in cases implying that solitary confinement automatically triggers due process protection, *Wolff, supra,* at 571, n. 19, 94 S.Ct., at 2982, n. 19; *Baxter v. Palmigiano,* 425 U.S. 308, 323, 96 S.Ct. 1551, 1560, 47 L.Ed.2d 810 (1976) (assuming without deciding that freedom from punitive segregation for " 'serious misconduct' " implicates a liberty interest, holding only that the prisoner has no right to counsel) (citation omitted), this Court has not had the opportunity to address in an argued case the question whether disciplinary confinement of inmates itself implicates constitutional liberty interests. We hold that Conner's discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest. The record shows that, at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody. We note also that the State expunged Conner's disciplinary record with respect to the "high misconduct" charge nine months after Conner served time in segregation. Thus, Conner's confinement did not exceed similar, but totally discretionary, confinement in either duration or degree of restriction. Indeed, the conditions at Halawa involve significant amounts of "lockdown time" even for inmates in the general population. Based on a comparison between inmates inside and outside disciplinary segregation, the State's actions in placing him there for 30 days did not work a major disruption in his environment.
>
> Nor does Conner's situation present a case where the State's action will inevitably affect the duration of his sentence. Nothing in Hawaii's code requires the parole board to deny parole in the face of a misconduct record or to grant parole in its absence, Haw.Rev.Stat. §§ 353–68, 353–69 (1985), even though misconduct is by regulation a relevant consideration, Haw.Admin.Rule § 23–700–33(b) (effective Aug. 1992). The decision to release a prisoner rests on a myriad of considerations. And, the prisoner is afforded procedural protection at

> his parole hearing in order to explain the circumstances behind his misconduct record. Haw.Admin.Rule §§ 23–700–31(a), 23–700–35(c), 23–700–36 (1983). The chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause. The Court rejected a similar claim in *Meachum,* 427 U.S., at 229, n. 8, 96 S.Ct., at 2540 (declining to afford relief on the basis that petitioner's transfer record might affect his future confinement and possibility of parole).

*Sandin v. Conner*, 515 U.S. 472, 483-87 (1995) (footnotes omitted). Regarding the issue of parole in particular, the Court found that the fact that charges could be used against the prisoner in his parole hearing was not a significant deprivation of his liberty interest because the charges did not inevitably affect his sentence, parole was based on a myriad of considerations, and the prisoner had a chance to explain the circumstances behind his record. *Id.* at 487.

Thus, the fact that false charges could have been references in a parole hearing does not violate the Constitution or entitle Plaintiff to Due Process. Plaintiff's complaint does not contain sufficient facts to find a claim because it does not give any factual basis for claiming that Plaintiff was denied his parole hearing because of the false accusations.

That said, Plaintiff does allege that the false allegations were made in retaliation for his exercise of the First Amendment through 602 grievances. The Court addresses that claim below.

### D. Retaliation

Allegations of retaliation against a prisoner's First Amendment rights may support a section 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). A retaliation claim requires "five basic elements: (1) an assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted); *accord Watson v. Carter*, 668 F.3d 1108, 1114-15 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Plaintiff alleges that he was retaliated against because he filed various 602 complaints against staff and all three defendants. Plaintiff also alleges that he was retaliated against for saying hello to female staff.

Legally, Plaintiff's allegations could state a claim to the extent he pleads facts that would support an inference that staff members filed false claims against him in retaliation for him exercising his free speech rights through filing grievances. However, Plaintiff does not allege specific facts that support the inference that the false write-ups or the adverse job position were given to Plaintiff in retaliation for these actions. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief ...." Fed.R.Civ.P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. *Id.* at 1949–50.

Plaintiff's conclusions are not sufficient. Plaintiff must allege specific facts connecting the false claims to his 602 grievances. Plaintiff does not allege, for example, that the assigning official commented on his grievances or linked his kitchen duty to those grievances.

**E.    Conspiracy**

To state a claim for conspiracy under section 1983, Plaintiff must show the existence of an agreement or meeting of the minds to violate constitutional rights, *Avalos v. Baca*, 596 F.3d 583, 592 (9th Cir. 2010); *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2001), and an actual deprivation of constitutional rights, *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. *Empress LLC v. City and County of*

*San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005); *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (2002).  However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations omitted).  A plaintiff must set forth "the grounds of his entitlement to relief [,]" which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action...." *Id.* at 1964-65 (internal quotations and citations omitted).  As such, a bare allegation that defendants conspired to violate plaintiff's constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

In the SAC, Plaintiff alleges that the three defendants, counselor Miranda, correctional officer Torres, and Free Cook Luna, made an agreement to cause harm to Plaintiff by sabotaging his early parole date.  Specifically, Plaintiff alleges that defendants gave Plaintiff five false write-ups within 93 days of his parole date because Plaintiff had written 602 complaints and said hello to female staff members.

Plaintiff fails to allege sufficient facts support such a claim.  Although Plaintiff alleges that defendants tried to sabotage Plaintiff's parole date, this conclusion is not sufficient. Plaintiff must again allege specific facts, such as what was said to Plaintiff, that demonstrate that the defendants had a plan to issue false statements for the purpose of violating or retaliating against Plaintiff's constitutional rights.  Conspiracy itself is a not a claim without the showing of a violation of a constitutional right.  *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v. Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)). Like the retaliation claim, Plaintiff must allege facts showing that defendants submitted false claims for an unconstitutional purpose, and not to be mean or harass Plaintiff.  Plaintiff could allege, for example, something defendants said that connects the false claims to keeping him in prison or filing 602 grievances.

### F.    State Law Claims

Plaintiff alleges at least one state law claim (intentional infliction of emotional distress). Plaintiff is informed that violation of state tort law or other state law is not sufficient to state a claim for relief under section 1983.  To state a claim under section 1983, there must be a

deprivation of federal constitutional or statutory rights. *See Paul v. Davis*, 424 U.S. 693 (1976). Although the Court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. 28 U.S.C. § 1367. As Plaintiff's SAC does not state a cognizable claim for relief under federal law, the Court may not exercise supplemental jurisdiction over Plaintiff's state law claim(s).

## VI.    CONCLUSION AND ORDER

The Court finds that Plaintiff's SAC fails to state a cognizable claim against any defendant under § 1983. The Court will allow Plaintiff to file a third amended complaint if he believes that he can plead additional true facts that would state a claim under the law explained above. Otherwise, the Court will dismiss Plaintiff's case.

Should Plaintiff choose to amend the complaint, the amended complaint should be brief. Fed. R. Civ. P. 8(a). The amended complaint must allege constitutional violations under the law as discussed above. Specifically, Plaintiff must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights. Fed. R. Civ. P. 8(a); *Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. *Iqbal*, 556 U.S. at 676. Plaintiff must also demonstrate that each defendant *personally* participated in the deprivation of his rights by acting with deliberate indifference to Plaintiff's health or safety, which is sufficiently serious. *Jones*, 297 F.3d at 934 (emphasis added). Plaintiff is advised that a short, concise statement of allegations in chronological order will assist the court in identifying his claims. Plaintiff should name each defendant and explain what happened, describing personal acts by the individual defendant that resulted in the violation of Plaintiff's rights. Plaintiff should also describe any harm he suffered as a result of the violation.

Plaintiff should note that although he has been given the opportunity to amend, it is not for the purpose of changing the nature of this suit or adding unrelated claims. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Plaintiff is advised that an amended complaint supersedes the original complaint, *Lacey*

*v. Maricopa County*, 693 F 3d. 896, 907 n.1 (9th Cir. 2012) (*en banc*), and it must be complete in itself without reference to the prior or superseded pleading, Local Rule 220.  Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged.  The amended complaint should be clearly and boldly titled "Third Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's Second Amended Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. Plaintiff may file a Third Amended Complaint curing the deficiencies identified by the Court in this order if he believes additional true factual allegations would state a claim, within **thirty (30) days** from the date of service of this order;
4. If Plaintiff chooses to file an amended complaint, Plaintiff shall caption the amended complaint "Third Amended Complaint" and refer to the case number 1:16-cv-00458-EPG; and
5. <u>Failure to comply with this order will result in the dismissal of this action.</u>

IT IS SO ORDERED.

Dated:   **January 24, 2017**         /s/ *Erica P. Grosjean*
                                       UNITED STATES MAGISTRATE JUDGE